WOODBURN v. TEXAS TOWN LOT & IMPROVEMENT CO. et al.

(Court of Civil Appeals of Texas. El Paso. Jan. 23, 1913.)

1. HUSBAND AND WIFE (§ 274*)—COMMUNITY PROPERTY—RIGHTS OF HEIRS—BONA FIDE PURCHASER.

Where land is conveyed to a husband, no beneficial interest of the wife appearing upon the face of the deed, her interest in the same by virtue of the marital community is equitable, the entire legal title being vested in the husband; and upon her death her heirs succeed to no such legal title or interest in the land as would defeat the rights of an innocent purchaser from the husband.

[Ed. Note.—For other cases, see Husband and Wife, Cent. Dig. §§ 1026–1031; Dec. Dig. § 274.*]

2. HUSBAND AND WIFE (§ 275*)—COMMUNITY PROPERTY—BONA FIDE PURCHASERS FROM HEIRS.

Where the legal owner of land dies, leaving three children and a wife, who remarries and has a child from such marriage, and after the death of the mother one of the three children of the legal owner dies, a purchaser must take notice of the child of the second marriage, who is an heir to the child who died, and will be deemed to have notice of the right of such child to share in the equitable marital interest held by the mother.

[Ed. Note.—For other cases, see Husband and Wife, Cent. Dig. § 1025; Dec. Dig. § 275.*]

3. LIMITATION OF ACTIONS (§ 19*)—QUIETING TITLE—HEIRS.

The three-year statute of limitations is not applicable in an action to quiet title by an heir who had not joined in conveying the land.

[Ed. Note.—For other cases, see Limitation of Actions, Cent. Dig. §§ 73–85; Dec. Dig. § 19.*]

Appeal from District Court, Harris County; Norman G. Kittrell, Judge.

Action by Mrs. Sam Woodburn against the Texas Town Lot & Improvement Company and others. Judgment for defendants, and plaintiff appeals. Affirmed as to some defendants and reversed as to others.

Lewis R. Bryan, of Houston, for appellant. Elliott Cage, L. M. Williamson, Masterson & Masterson, J. K. P. Gillaspie, Kennerly & Warnken, and J. W. Campbell, all of Houston, for appellees.

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key-No. Series & Rep'r Indexes

HIGGINS, J. This was a suit in trespass to try title and for partition of an undivided one-sixth interest in a 10-acre tract of land in the city of Houston. Upon trial before the court judgment was rendered in favor of the defendants, from which this appeal is prosecuted. Findings of fact and conclusions of law were filed by the trial court as follows:

"Findings of Fact.

"(1) The land in controversy was conveyed to Isaac Allen by deed in ordinary form on February 4, 1847.

"(2) Allen had at the time a wife, who was the mother, by him, of three children, Sallie, Mary, and John.

"(3) Something like a year after his death his widow married one Henry Vinsen or Vincent, and of that marriage was born the plaintiff in this case, and she was, when this suit was brought, approximately 60 years old.

"(4) Plaintiff's mother died when she was about two years old, and her father has been dead since 1899.

"(5) Her brother, John Allen, died when about 16 years old, after his mother died.

"(6) The plaintiff offered no evidence on the question of purchase in good faith by defendants to meet such defense, as against the unregistered claim of right of plaintiff as heir of her mother; but defendants assumed that burden and introduced testimony to the effect that they had bought in good faith, knowing nothing of any claim by any person, and without ever having heard of plaintiff. They also proved payment of taxes for many years, and Mrs. Smith and Mrs. McKay proved long possession.

"(7) All the evidence of plaintiff and her witnesses as to heirship was more or less vague as to dates of deaths and marriages, and was based on family history and tradition, and was, to some extent, contradictory and of doubtful sufficiency to stand the test of judicial scrutiny, and, did I take a different view of the law, I should hesitate to hold it sufficient; but for the purpose of these findings and conclusions it may be so treated.

"(8) Before purchasing the 10-acre lot, some of the grantors on the claim of title procured from one of the leading law firms of this city an opinion upon it, in the course of which they passed upon the affidavit of heirship. The opinion of Baker, Botts, Parker & Garwood, in so far as it referred to the question of heirship of Mrs. Ballou and Mrs. Dell, was as follows: 'November 22, 1873, J. A. Ballou and wife, Mary S. Ballou, and P. W. Dell and wife, Sallie E. Dell, conveyed to J. W. Cook said 10-acre lot No. 87 in the Holman survey. There is nothing in the abstract to show where the grantor in this instrument procured any interest in the property in question, further than the affidavit of J. H. Muldrow, on page 4 of the abstract, to the effect that Mrs. Ballou and Mrs. Dell were the sole heirs of Isaac Allen at the time of the execution of this instrument. Whether or not the facts as reflected in said affidavit are true, it is a question of fact about which we know nothing. However, for all practicable purposes, we would say that this affidavit is sufficient.' In concluding the opinion the attorneys said: 'If it be true that J. A. Ballou et al. joining in the deed to J. W. Cook were the sole heirs at law of Isaac Allen, as claimed, then it would appear from the abstract that J. W. Cook, Jr., has a good title to the property in question.' The affidavit read as follows:

"'The State of Texas, Fort Bend County:

"'Before me, the undersigned authority, on this day personally appeared J. H. Muldrow, known to me, who being duly sworn deposes and says: That he was well acquainted with Isaac Allen. He departed this life about the year 1852 in don't know what county, Texas, and from an intimate acquaintance with his family and family relations for many years prior thereto he [the affiant] has good reason to believe and verily does believe that at the time of his death the said Isaac Allen left surviving him three children, to wit, Mariah (or Mary), who afterwards married one J. A. Barlow, Sarah (or Sallie), who afterwards married P. W. Dell, and a son, John, who died at the age of 16 years, about the year 1860. J. H. Muldrow. J. M. Cassil, Justice of the Peace and Ex Officio Notary Public in and for Fort Bend County, Texas. [Seal.]'

"(9) There was nothing on the face of the deed to show that any person had any interest in the property when the deed was made to Isaac S. Allen.

"Upon these findings of fact I base the following:

"Conclusions of Law.

"(1) I hold that the defendants McKay and Smith have proved title by limitation, and hence should have judgment.

"(2) The authorities seem to hold that, where the plaintiff's title rests on an unregistered equity claimed by inheritance as against those claiming as innocent purchasers, the burden is on him or her to prove notice on the part of defendant. This plaintiff did not undertake to do; and hence, on the ground of such failure, the court would be authorized to render judgment for defendants, but there are other grounds controlling this decision.

"(3) This case seems to me to be radically different from the case of Ross v. Morrow [85 Tex. 172, 19 S. W. 1090, 16 L. R. A. 542] and Hill v. Moore [85 Tex. 335, 19 S. W. 162], and from N. Y. & Texas Land Co. v. Highland [8 Tex. Civ. App. 601, 28 S. W. 206], but seems to me to be in line with the case of Gilmer v. Veatch, 102 Tex. 384 [117 S. W. 430].

"(4) The affidavit of heirship on which those through whom defendants' claim relied,

and which they were advised was, for all practical purposes, sufficient, seems to me to have been sufficient to justify the purchase, and that a purchase made upon such advice and opinion was in legal effect a purchase in good faith, which is a mixed question of law and fact.

"(5) The legal title having vested in Isaac Allen by the deed of February 4, 1847, it descended upon his death, by inheritance, to his children, Mary, Sallie, and John. The plaintiff was in no sense an heir of Isaac Allen, but was the heir of her mother, whose right in the property was an unregistered equity, which she had by virtue of having been a member of the community marital partnership of Isaac Allen and herself.

"(6) In Gilmer v. Veatch the Supreme Court held that the fact that the younger Veatch conveyed as the heir of his father was not sufficient to put any party dealing with him upon notice or inquiry that his mother may have had an interest, or that she may have been living or have been married to his father when he (the father) received a deed to the land, because that was, the court said, 'pushing the doctrine of notice too far.'

"(7) If this is the law, then certainly, under the facts of this case, there is nothing shown that could possibly have put anybody on notice that Mrs. Allen had remarried and had other children, or another child.

"(8) The holding of the court in Gilmer v. Veatch and the failure of plaintiff to meet the requirement of fixing notice against the defendants would require judgment for defendants; and it is accordingly so ordered."

We adopt the first, second, third, fourth, fifth, eighth, and ninth findings of fact.

The land in controversy is a part of the James S. Holman survey, originally patented by the republic of Texas to Mosely Baker, and was conveyed by Baker to John H. Walton, by John H. Walton to Isaac Allen on February 4, 1847, by Mary S. Ballou and Sallie Dell, joined by their respective husbands, to J. W. Cook, by J. W. Cook to J. W. Cook, Jr., and by J. W. Cook, Jr., to A. M. Breeding, under whom these defendants claim, by direct or mesne conveyances. Isaac Allen died about the year 1850.

The assignments will not be considered or discussed in the order of their presentation; it being deemed more logical to state generally what is conceived to be the principles governing a correct disposition of the case.

[1] By a long line of authorities it is settled that when land is conveyed to the husband, no beneficial interest of the wife therein appearing upon the face of the deed, her interest in the same by virtue of the marital community relationship is equitable, the entire legal title being vested in the husband; and upon her death her heirs succeed to no such legal title or interest in the land as would defeat the rights of an innocent bona fide purchaser for value from the husband.

Patty v. Middleton, 82 Tex. 586, 17 S. W. 909; Hensley v. Lewis, 82 Tex. 597, 17 S. W. 913; West v. Keeton, 17 Tex. Civ. App. 139, 42 S. W. 1034; Brackenridge v. Rice, 30 S. W. 588; Daniel v. Mason, 90 Tex. 244, 38 S. W. 161, 59 Am. St. Rep. 815; Mangum v. White, 16 Tex. Civ. App. 254, 41 S. W. 80; Malry v. Grant, 48 S. W. 616; Oaks v. West, 64 S. W. 1036; Davidson v. Green, 27 Tex. Civ. App. 394, 65 S. W. 1111; McCoy v. Cunningham, 27 Tex. Civ. App. 476, 65 S. W. 1085. This is based upon the theory that such persons will be protected against secret equities which are sought to be ingrafted upon the legal title. But one who undertakes to purchase from the heirs of a decedent is charged with notice of who all of the heirs are. Ross v. Morrow, 85 Tex. 172, 19 S. W. 1090, 16 L. R. A. 542; Ferguson v. Kentucky, etc., 25 S. W. 1074. And in Sanborn v. Schuler, 86 Tex. 116, 23 S. W. 641, Judge Stayton said: "Every purchaser must ascertain who is entitled to take by inheritance any particular property belonging to the estate of a deceased person dying intestate." The learned trial court based its judgment upon the theory that the plaintiff in this case had no interest in the legal title to the land, but had only and was seeking to recover merely an unregistered secret equity therein as an heir of her mother; and, defendants' grantor, Breeding, having purchased from Mrs. Ballou and Mrs. Dell, the heirs of Isaac Allen, who was the holder of the legal title, for value, without notice of plaintiff's rights, she was therefore precluded from recovering.

[2] The court held that Breeding was a purchaser without notice, as there was nothing to affect him or his vendees with knowledge of the fact that Mrs. Allen had remarried and had another child, and it would be carrying the doctrine of constructive notice too far to presume that they were affected with notice of such facts. Gilmer v. Veatch, 102 Tex. 384, 117 S. W. 430; Texas Loan Agency v. Taylor, 88 Tex. 47, 29 S. W. 1057. Appellant's rights, however, depend upon no such condition, as it is evident she was claiming as the heir of her deceased brother, John Allen, as well as of her mother, and that she inherited from her brother a legal and equitable interest in the land additional to the equitable interest theretofore acquired from the mother. Upon the death of Isaac Allen the legal title became vested equally in the children, Sallie, Mary, and John; the wife owning an undivided one-half equitable interest. Upon the death of the wife her equitable interest passed to plaintiff and the above-named children. Upon the death of John his legal and equitable title passed by inheritance to Sallie, Mary, and plaintiff. We thus see that plaintiff had not only an equitable but a legal interest in the land as an heir of her brother, acquired entirely independent of her rights as an heir of the

mother. Mrs. Sallie Dell's and Mrs. Mary Ballou's interest and ownership in the land was not only as heirs of Isaac Allen and wife, but of John as well, and the purchaser from them, as such heirs, was affected with knowledge of who John Allen's heirs were; and in like manner the defendants herein, claiming under him, were affected with such knowledge. Ross v. Morrow, and Ferguson v. Kentucky, etc., above cited. Being thus undeniably affected with notice of plaintiff's rights as an heir of John, the trial court erred in his conclusion of law; and, since they are thus affected with notice of her rights in this respect, they are therefore necessarily charged with notice of the further rights which she acquired through her mother.

[3] The court also erred in holding that the appellees Mary H. Smith and husband, W. H. Smith, had acquired title by limitation. The three-year statute is not applicable; and it appears that her deed is dated March 15, 1906, recorded April 19, 1906, and that prior to her conveyance the land was not in possession. The suit was filed March 10, 1911.

No error is assigned to the finding that Sallie McKay and her husband, George McKay, have acquired title by limitation.

Ordinarily, in a case of this kind, the proper judgment to be rendered by this court is one of reversal and rendition; but in view of the doubt expressed by the trial court in the seventh paragraph of his findings of fact, as to the sufficiency of the evidence relating to the plaintiff's heirship, it is deemed improper to here render.

For the reasons indicated, the judgment is affirmed as to Sallie and George McKay, and reversed and remanded as to all the remaining defendants.